**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:11CV31-RLV**

| | |
|---|---|
| BARRY MALLEK, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br>ALLSTATE LIFE INSURANCE COMPANY, ) <br> Defendant / Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br>ALICE MALLEK, ) <br> Third-Party Defendant. ) <br>_____) | **Memorandum and Order** |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment and all related materials. (Docs. 13–16, 21, 22).

**I.**

Plaintiff Barry Mallek ("BM") is a former law enforcement officer and employee of the United States Department of Homeland Security ("USDHS"). (Compl., ¶ 5).

Defendant / Third-Party Plaintiff Allstate Life Insurance Company ("Allstate") manages an annuity contract that was entered into as the result of a structured settlement between the USDHS and BM. (Pl.'s Exh. B; Doc. 16 / Exh. 2 - Dever Aff., 3).

BM and Third-Party Defendant Alice Mallek ("AM") were married for approximately thirty-four (34) years and are now divorced. (Compl., ¶ 12).

This civil action stems from a dispute between BM and Allstate, as the administrator of the Annuity, regarding disbursement of a portion of the Annuity's monthly periodic payments to BM's ex-wife, AM. The payments to AM occurred at the direction of a Stipulated Qualified

Domestic Relations Order ("QDRO") signed by Plaintiff.[1]  (Pl.'s Exh. A).

### A. Barry Mallek and the United States Department of Homeland Security Enter Into a Settlement Agreement Requiring Purchase of a Non-Assignable Annuity Identifying Barry Mallek As Payee

BM served as a police officer with USDHS for approximately thirteen (13) years. (Compl., ¶ 5).  During his term of employment, several disputes arose between BM and USDHS.[2]  On or about April 14, 2006, USDHS and BM reached a global settlement resolving all such employment-related claims.[3]  (Pl.'s Exh. B).  The Settlement Agreement provided for USDHS to award BM the sum of $750,000.  (Pl.'s Exh. B, § IIIa).  USDHS paid the settlement funds into The Lawcol Corporation Premium Trust Account ("Lawcol") for distribution of the $750,000 in three equal installments of $250,000 at designated intervals during 2006.  *Id.*

To fund its settlement obligation to BM, USDHS, through Lawcol, purchased Annuity Contract No. SSAL12975A (the "Annuity") from Allstate.[4]  (Dever Aff., ¶ 4).  The Annuity identified BM as both the "Payee" and the "Measuring Life."  (Pl.'s Exh. C).  Under the Annuity, BM was to receive monthly payments of $3,821.46 per month, beginning December 1, 2006, and continuing for thirty years guaranteed, and for the remainder of BM's life.  Assuming BM was living at the time all three installments from Lawcol were made, the Settlement Agreement

---

[1] "QDRO" is meant to refer to the same term as used within the Retirement Equity Act of 1984, PL No. 98-397, which relevant provision is codified at 29 U.S.C. § 1056(d)(3) (specifying criteria for creation of a QDRO).  (Pl.'s Exh. A, 1 and § 4.7).

[2] According to the Complaint, Plaintiff BM was injured during the course of his employment with USDHS.  (Compl., ¶ 6).

[3] The Settlement Agreement states that the agreement resolves "all cases, claims, enforcement actions, including, but not exclusive to the above captioned case [EEOC No. 370-2005-00402X] and EEOC Appeal No. 01973699, Petition No. 04A40034 and Request No. 05A00914, MSPB[Merit Systems Protection Board] Case SF-0752-05-0785-I-1 and GSA Agency No. 01A61299."

[4] The Annuity was comprised of three "Single Premium Immediate Life Annuities."  (Pl.'s Exh. C). Upon receipt of the installments, Lawcol's disbursements were used to purchase the three annuities.

explained that USDHS would purchase the Annuity:

> Beginning on December 1, 2006, pay $3,821.46 per month to Barry D. Mallek, guaranteed for thirty (30) years and continuing for the life of Barry D. Mallek.
> ***
> ***The annuity contract will be owned solely and exclusively by the United States*** . . . . The parties stipulate and agree that the United States' only obligation with respect to said annuity contract and any annuity payments therefrom is to purchase the annuity contract, and they further agree that the United States does not guarantee or insure any of the annuity payments.
> ***
> The parties stipulate and agree that the annuity company that issued the annuity contract[Allstate] or its assignee(s) shall at all times have the sole obligation for making all annuity payments.
> ***
> The parties stipulate and agree that the annuity payments ***cannot be assigned***, accelerated, deferred, increased, or decreased by the parties, ***that no part of any annuity payments called for herein . . . are subject to execution or any legal process*** for any obligation in any manner, and that the ***claimants shall not have the power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise***.

(Pl.'s Exh. B, § III, 3) (emphases added). Under the terms of the Settlement Agreement, the monthly annuity payments to Plaintiff BM were not assignable.

The Annuity also contained a "non-assignable" provision, which reads in pertinent part:

> NON-ASSIGNABLE – Payments may not be anticipated, assigned or pledged as collateral. Payment dates and amounts may not be changed, either to provide for earlier payment or longer deferral. The contract has no cash surrender or policy loan value.
> So far as the law allows, all payments to any person ***named by USDHS*** to receive them are exempt from that person's creditors, debts and contracts, and from seizure or attachment by court order or other legal process.

(Pl.'s Exh. C, 4) (emphasis added). In addition, only the USDHS has the authority to change the beneficiary to the Annuity. The Annuity provides as follows:

> "BENEFICIARY – ***Unless changed by the USDHS***, the beneficiary is as named in the application. If there is no beneficiary named or living, the beneficiary is the Measuring Life's[BM] estate. . . . Unless USDHS states otherwise by irrevocably naming a beneficiary, ***USDHS may change the***

*beneficiary* while the Measuring Life[BM] is alive. A change must be made to us in writing. The change must be acceptable to us[Allstate]. . . ."

*Id*.

### B. Barry and Alice Mallek Divorce and Execute a Qualified Domestic Relations Order ("QDRO") Purporting to Assign Alice Mallek an Interest in the Annuity

On or about January 4, 2006, Plaintiff BM and Third-Party Defendant AM separated.[5] (Compl., ¶ 12). The domestic civil action dissolving the marriage was commenced in the Superior Court for San Mateo County, California, and styled, *In Re the Marriage of Petitioner: Alice Mallek and Respondent Barry David Mallek*, Case No. FAM087872. (Allstate Answer, ¶ 15).

On or about May 13, 2008, more than two years later, in connection with distribution of the marital estate, BM and AM executed an "Amended Stipulated Qualified Domestic Relations Order Re: Allstate Life Insurance Company, Contract No. SSAL12975A" ("QDRO") purporting to award AM an interest in the Annuity.[6] (Pl.'s Exh. A). The QDRO "was prepared by Sherman, Naraghi, Woodcock & Pipersky, a Professional Law Corporation, offering non-adversarial advice and mediation services and operated by attorneys licensed with the State of California."[7] (Pl.'s Exh. A, § 4.10).

---

[5] There is a discrepancy concerning when the parties actually began living separately. In his Complaint, BM alleges that the parties separated "on or about January 2006, shortly before the [Settlement] Agreement was finalized." (Compl, ¶ 12). However, according to AM, she filed for divorce in 2005 yet she and Plaintiff continued to live together until 2009. (Docs. 11, 12). AM further states that she and Plaintiff shared the annuity payments for their joint household obligations until May 2009. *Id*. In fact, Plaintiff first complained to Allstate about the assignment to AM in April 2009. (Compl, ¶ 22).

[6] Although titled as an "Amended Stipulated QDRO," the parties have not produced an original or unamended version of this QDRO.

[7] The QDRO expressly states that the drafter did not legally represent either party, "but prepared this QDRO based on the written instructions of one or both parties. (Pl.'s Exh. A, § 4.10). According to AM, BM learned of a service called "Divorce Helpline" that recommended Attorney Charma Pipersky as "an expert in QDROS." (Third-Party Def.'s Resp., 3). AM claims that BM provided the attorney with all

Page **4** of **17**

The QDRO represented on its face that "Husband and Wife understand that the interest in the Structured Settlement Annuity given to Wife in this Stipulated QDRO may not be one-half of the community property interest in the Structured Settlement Annuity as defined by California law. They, nevertheless, stipulate and agree to the division set forth herein." (Pl.'s Exh. A, 3). The distribution of interest to AM contemplated that AM receive $3,500 per month (of the $3,821.46 monthly sum) from the Allstate annuity. (Pl.'s Exh. A, § 2.1). The QDRO required that a copy be sent to Allstate "who shall, pursuant to 29 U.S.C. [§] 1056(d)(3)(G)":

> b. Within a reasonable period of time after receipt of a copy of this Stipulated Order, ***determine whether this Order is a QDRO*** and notify Husband, Wife and any other alternate payee of such determination;
>
> c. ***Pending the determination of whether or not this order is effective in dividing Husband's annuity***, Allstate Life Insurance Company will simply put all annuity payments on hold ***until their Legal Department determines if they are going to honor this document***. ***If approved by Legal***, then Allstate would simply send separate checks to Alice Mallek and Barry Mallek in whatever amount was due to them at that point (including any payments held back).

(Pl.'s Exh. A, § 4.5) (emphases provided). The QDRO represented that it "shall become a Qualified Domestic Relations Order effective 30 days thereafter unless such 30 day delay is waived by the Plan[Allstate] or unless, within said 30 day period, the Plan files a motion to modify or set aside this QDRO" pursuant to California law.[8] (Pl.'s Exh. A, 6). Allstate never took any steps such as to file a motion pursuant to California law to modify or set aside the QDRO. According to Allstate, it "did not provide Mr. Mallek[BM] with any legal or other

---

of the necessary paperwork, account numbers, and addresses for preparation of the QDROs. Id. BM claims that AM retained counsel to assist her in preparation of three (as opposed to the two QDROs mentioned by AM) QDROS distributing the marital estate. (Compl., ¶ 13).

[8] By acknowledging that Allstate could deem this an ineffective attempt to create a QDRO, or otherwise elect not to honor the intended QDRO, the Stipulated QDRO undermined its capacity to serve the purposes Husband and Wife presumably intended for it.

advice with respect to the Stipulated Order." (Dever Aff., ¶ 8). The QDRO was ultimately approved and signed by a California State Superior Court Judge on June 6, 2008. (Pl.'s Exh. A; Dever Aff., ¶ 7; Allstate Answer, Exh. B).

### C. Barry Mallek Challenges Validity of the QDRO and Seeks to Recover Funds Paid to Alice Mallek by Allstate

On April 8, 2009, less than a year after execution of the QDRO, BM sent Allstate a notice demanding that the payments to AM should cease and all future payments should be placed into BM's bank account. (Compl., ¶ 22). BM next demanded that Allstate reimburse BM for all funds diverted from BM to AM. (Compl., ¶ 22). On April 28, 2009, Allstate refused BM's demand. (Compl., ¶ 22). BM alleges that Allstate has wrongfully paid $104,500 to AM. (Pl.'s Exh. A / Compl., ¶¶ 21, 29).

On or about February 10, 2011, BM commenced this lawsuit in the North Carolina General Court of Justice, Superior Court Division, Catawba County, alleging constructive fraud / breach of fiduciary duty and breach of contract claims against Allstate. (*See Barry Mallek v. Allstate Life Insurance Company*, Civil No. 11-CVS-000444). Plaintiff's Complaint seeks compensatory and punitive damages, interest, costs and reasonable attorney fees. (Compl., Prayer for Relief, ¶¶ 1–4).

Allstate was served on Februrary 11, 2011. (Doc. 1 / Exh. B). Allstate suspended payment of the $3,500 per month to AM with respect to periodic payments otherwise due on or after April 1, 2011. (Dever Aff., ¶ 10).

On March 17, 2011, Defendant Allstate filed a timely "Petition for Removal" of the state court action to this federal district court. (Doc. 1). On March 24, 2011, Allstate filed its Answer / Affirmative Defenses and Third-Party Plaintiff Complaint. (Doc. 4). The fourteen affirmative defenses asserted by Allstate include the following: failure to state a claim upon which relief

may be granted; estoppel, unclean hands, failure to mitigate damages, waiver, statute of limitations, consent, contributory negligence, laches, and accord and satisfaction.  Allstate's remaining affirmative defenses assert that BM's Complaint "constitutes an improper collateral attack" on the QDRO.  (Allstate Answer, at 4).

Allstate joined AM as a party by naming her as a Third-Party Defendant and in requesting that the Court enter an Order pursuant to 28 U.S.C. § 2361 directing service of the Complaint for Interpleader on AM (who resided in the State of California at the time) through the U.S. Marshal's Service.  According to Allstate, AM was served on October 3, 2012.[9]  (Def.'s Opp'n, 4).  In her filing, AM asserts that she is entitled to receipt of $3,500 of the monthly annuity payment.  (Doc. 11 / *Pro Se* Answer).

Allstate, through its Interpleader Claim, requests that it be dismissed as a party.  (Allstate Answer / Third-Party Complaint, ¶¶ 6–22).  Allstate is prepared to make the remainder of the periodic payments, as they become due, into the Court and to comply with any final order of this Court directing who is the proper recipient of the same.  (Allstate Answer, ¶ 3; Dever Aff., ¶ 10). BM opposes Allstate's Interpleader Claim.  (Doc. 9).

On October 18, 2012, AM, acting *pro se*, filed a document entitled, "Declaration." (Doc. 11).  On November 6, 2012, AM filed a second document under seal entitled "Ex-Parte Declaration."  (Doc. 12).  The Court construed AM's filings as an "Answer" or other "responsive pleading" for purposes of Fed. R. Civ. 4.

On December 12, 2013, AM filed a Motion for Extension of Time requesting the ability to respond to the Third-Party Complaint and Plaintiff's Motion for Summary Judgment.  (Doc. 19).  The Magistrate Judge granted AM's motion and instructed AM as to the nature of her

---

[9] Allstate's brief says that service occurred on October 18, 201<u>1</u>, which is presumably an error.

summary judgment response. (Doc. 20).

On December 23, 2013, Third-Party Defendant AM filed a supplemental responsive pleading and several attachments. (Doc. 21). In sum, AM argues that BM acted "in bad faith in order to renege on his deal" with her and that BM is not entitled to relief in light of the "clean hands doctrine." (Third Party Def.'s Resp., 1–2, 4). BM contends that AM's position is irrelevant since AM is not a party to the underlying agreement and that AM's filing should not be considered by the Court in deciding the instant motion.[10] (Pl.'s Reply, 2).

Federal subject matter jurisdiction is proper over this action pursuant to 28 U.S.C. § 1332(a).[11]

## II.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2010). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

---

[10] BM suggests that AM's remedy is to seek redress in the California Family Court.

[11] There is also a related bankruptcy case pending in this district. *See In re: Barry Mallek*, Case No.: 10-51087. (Pl.'s SJ Exh. 2). The bankruptcy proceeding was originally filed under Chapter 13 and converted to Chapter 7 on November 23, 2011. Reportedly, BM unsuccessfully sought to have the instant claims against Allstate declared exempt from becoming part of the bankruptcy estate. (Bankruptcy Doc. 61). The Bankruptcy Trustee and BM have since agreed that BM may proceed with prosecution of this claim against Allstate. According to Allstate, BM and the Bankruptcy Trustee settled all of the other issues. (Def.'s Opp'n, 5). Allstate also represents that it intends to seek relief from the automatic stay in bankruptcy to pursue a cross-motion for summary judgment as to Allstate's interpleader claim and Plaintiff's claims here. (Def.'s Opp'n, 5 n. 4).

fact." FED. R. CIV. P. 56(c)(1); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (same). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In conducting its analysis, the Court views the evidence in the light most favorable to the non-moving party. *Celotex Corp.*, 477 U.S. at 325; *Liberty Life Assurance Co. of Boston v. Gilbert*, 507 F.3d 952, 959 (6th Cir. 2007).

## III.

### A. Breach of Contract

To prevail on a breach of contract claim, Plaintiff must allege sufficient facts to show "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. App. 2000). A breach of contract is only actionable if a material breach occurs – one that "substantially defeat[s] the purpose of the agreement" or goes "to the very heart of the agreement," or can be "characterized as a substantial failure to perform." *Fletcher v. Fletcher*, 474 S.E.2d 802, 807-08 (N.C. App. 1996) (*internal quotations omitted*).

As to the threshold issue of standing, Allstate summarily argues that BM lacks standing to challenge Allstate's contractual obligation to USDHS. (Def.'s Opp'n, 6 n. 5). Plaintiff BM, who is not in privity of contract with Allstate, claims he was "the sole intended third party beneficiary" of the Annuity Contract owned by the USDHS and purchased from Allstate. (Compl., ¶ 17). Under third party beneficiary doctrine, BM likely has standing as a creditor beneficiary in that the Annuity's express purpose was to *directly* benefit BM and provide for the United States' payment to BM under the Settlement Agreement.[12] *See e.g., Vogel v. Reed Supply*

---

[12] Allstate does not advance any serious legal argument or factual challenge to the proposition that BM was the actual direct beneficiary under the terms of the Annuity.

*Co.*, 177 S.E.2d 273, 278 (N.C. 1970) (adopting framework for third party beneficiary status analysis set out in the Restatement of Contracts); *Holshouser v. Shaner Hotel Grp. Properties One Ltd. P'ship*, 518 S.E.2d 17, 25 (N.C.App. 1999) *aff'd*, 524 S.E.2d 568 (2000).

With respect to Plaintiff's breach of contract claim, neither party asserts that the Annuity Contract is invalid. Therefore, the only issue presented is whether a breach occurred. Plaintiff BM alleges that Allstate breached the Annuity "by making payments from the annuity to anyone except the Plaintiff." (Compl., ¶¶ 27–28). In response to the QDRO, Allstate, the drafter of the Annuity, began sending $3,500 of each monthly periodic payment to AM beginning September 1, 2008. (Dever Aff., ¶ 8). In doing so, Allstate sought to assign an interest expressly and unequivocally designated by the Annuity as unassignable. Thus, Allstate's action could be viewed as a material breach of the Annuity since it thwarted the Annuity's purpose.

Notwithstanding the alleged breach by Allstate, the Court finds that BM waived his ability to challenge the assignment to AM – a transaction Plaintiff previously insisted upon. Waiver, an affirmative defense, is "an intentional relinquishment or abandonment of a known right or privilege." *Medearis, III v. Trustees of Meyers Park Baptist Church, C.D.*, 558 S.E.2d 199, 206 (N.C.App. 2001) (internal quotation marks omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Clement v. Clement*, 55 S.E.2d 459, 461 (N.C. 1949); *Cantrell v. Woodhill Enters., Inc.*, 106 S.E.2d 476 (1968)). "Although waiver is a mixed question of law and fact, it is solely a question of law when the facts are not in dispute." *Medearis, III*, 558 S.E.2d at 206 (citing *Gouldin v. Inter-Ocean Ins. Co.*, 102 S.E.2d 846, 849 (N.C. 1958)). Here, the relevant facts are undisputed. As an initial matter, Plaintiff was one of two signatories of the QDRO. BM does not deny that he sought to assign the greater portion of his future annuity payment to his then soon to be ex-wife AM as one aspect of the court-approved distribution of the marital

estate and dissolution of their marriage. Rather, BM claims in part that he was "under the stress and strain of [his] divorce" and did not realize the contradiction – that assignment was expressly precluded by the Annuity's terms. (BM Aff., ¶¶ 8–9). As stated in the QDRO, BM had access to the attorney-drafter of the QDRO and was provided the opportunity to retain his own counsel. (Pl.'s Exh. A, § 4.10). In its defense, Allstate Financial's Senior Division Manager, Janet L. Dever, avers that Allstate was directed by BM in a writing dated June 27, 2008, to honor the QDRO and implement the same "immediately." (Doc. 16 / Exh. 2 – Dever Aff., ¶¶ 6–8; Allstate Answer, Exhs. B, C). BM waited until April 2009 to challenge the assignment to AM and seek to redirect or recover the full annuity payment for his own use. BM cannot now rely on or claim to enjoy the benefit of the anti-assignment provision within the Annuity by arguing that Allstate should not have honored a transaction consented to and endorsed by Plaintiff. For these reasons, the Court finds, as a matter of law, that BM waived his right to challenge the assignment of the annuity payments to AM.

Equitable estoppel also precludes Plaintiff from seeking to recover against Allstate under the Annuity. "Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Wachovia Bank, Nat'l Assoc. v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417–18 (4th Cir.2000)). Simply put, "it is unfair for a party to rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Wachovia Bank,* 445 F.3d at 769 (internal citation and quotation mark omitted). Fairness principles require that Plaintiff not be permitted to execute the QDRO to satisfy his support obligations in the California state court only to challenge the QDRO's effect in another forum.

Plaintiff's breach of contract claim will be dismissed.

**B. Constructive Fraud / Breach of Fiduciary Duty**

In addition to alleging breach of contract, BM asserts that Allstate breached its fiduciary duty to Plaintiff "by failing and refusing to honor the terms of its own Annuity contract . . . ." (Compl., ¶¶ 20, 22–23). BM seeks to recover the monies already paid to AM by Allstate under a constructive fraud theory.

Under North Carolina law, "a fiduciary relationship can be found to exist "anytime one person reposes a special confidence in another, in which event the one trusted is bound to act in good faith and with due regard to the interests of the other."" *Dixon v. Gist*, 724 S.E.2d 639, 643 (N.C.App. 2012) (internal citation omitted).

> "[A] claim for constructive fraud based upon a breach of such a relationship is sufficiently pled "by alleging facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff."

*Dixon*, 724 S.E.2d at 643 (internal citations omitted). "[A]n essential element of constructive fraud is that defendant[] sought to benefit [itself] in the transaction." *Trantham v. Michael L. Martin, Inc.*, 745 S.E.2d 327, 332 (N.C.App. 2013) (internal citations and quotation marks omitted); *Orr v. Calvert*, 713 S.E.2d 39, 44 (N.C.App. 2011); *Barger v. McCoy Hillard & Parks*, 488 S.E.2d 215, 224 (N.C. 1997) ("Implicit in the requirement that a defendant take advantage of his position of trust . . . is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself.")

According to Plaintiff, Allstate "was in a position of special trust and confidence and owed Plaintiff fiduciary duties." (Compl., ¶ 16). In support, BM avers that at the time the QDRO was submitted to Allstate for approval, BM:

- "entrusted that [Allstate's] decision would be accurate and supported by law."
- "relied on [Allstate's] determination that the Annuity benefits could be diverted to Alice Mallek;"

(Doc. 14 / BM Aff., ¶¶ 6–7). According to BM, "Allstate knew or in the exercise of any reasonable investigation and care should have known that it did not have the right to assign, transfer or to pay any of the annuity payments to anyone except the Plaintiff[BM]." (Compl., ¶ 19).

The Court presumes, for purposes of analysis only, that a fiduciary relationship existed between Allstate and BM.[13] However, Plaintiff BM fails to produce evidence that Allstate took advantage of its position for its own benefit to the detriment of Plaintiff. *See Trantham*, 745 S.E.2d at 332; *Orr*, 713 S.E.2d at 44; *Barger*, 488 S.E.2d at 224. Rather, Allstate honored *Plaintiff's request* to make payment to AM. Allstate received no monetary or other benefit.

BM's constructive fraud claim fails as a matter of law and will be dismissed.

**C. The Assignment Is Enforceable In Equity**

The Court next considers the effect of the assignment and whether the assignment is permissible under the law or in equity. In another case involving *Allstate Insurance Company*, the Fourth Circuit expressly held that when an annuity policy is purchased as part of a structured settlement and identifies the insurer (Appellant Allstate) as the owner of the policy, an annuitant's or beneficiary's attempted assignment is invalid. *See Allstate Ins. Co. v. Am. Bankers Ins. Co. of Florida*, 882 F.2d 856 (4th Cir. 1989) (applying Virginia law). The appellate *Allstate* decision presented an unusual set of facts because the purported assignment was used to secure an appearance bond for a third party in a criminal proceeding where the accused

---

[13] As pointed out by Allstate, Plaintiff proffers no legal authority for the proposition that Allstate owed BM a duty to pass upon the validity and legality of the QDRO. (Def.'s Mem. In Opp'n, 13 n. 6). The undersigned need not decide whether Allstate's responsibility to make the annuity payments consistent with the terms of the Settlement Agreement and Annuity gives rise to a fiduciary duty.

subsequently failed to appear causing the bond to be forfeited. *Allstate*, 882 F.2d at 859. The annuitant in the appellate *Allstate* case requested the purported assignment of his future interest in the annuity payments, and sought counsel concerning his ability to make the assignment from Allstate representatives and legal counsel. *Id*. at 858. Because the proposed transaction was objected to by the annuitant owner insurer (Allstate) at the outset, everyone involved was placed on notice (including the annuitant and the bonding company) that the annuitant's ability to assign the future annuity payment lawfully was questionable. *Id*. at 858−59. Once the bond was forfeited and demand for payment made by the bond company assignee, the annuitant sought to have the assignment rescinded. *Id*. at 859. After Allstate interpleaded, the assignment was rescinded and declared unenforceable under the rationale that the annuitant (beneficiary) could not effectively transfer an interest that was never his. *Id*. at 859−60. As explained by the Fourth Circuit:

> It is axiomatic that one may not sell, assign or hypothecate that which he does not own. . . .
>
> Moreover, the assignment did not constitute a valid legal assignment, because it did not operate as a transfer of a right of [the annuitant's] existing at the time the assignment was executed, but rather sought to transfer proceeds to which he was to become entitled in the future . . . .

*Allstate Ins. Co.*, 882 F.2d at 859−60 (internal citations omitted).[14] The Fourth Circuit also considered whether specific enforcement was an appropriate remedy. *Id*. Contemplating partial

---

[14] At least two other circuits are in agreement with this position. *See e.g., Settlement Funding, LLC v. Transamerica Occidental Life Ins. Co.*, 555 F.3d 422, 425−26 (5th Cir. 2009) (quoting *Allstate Ins. Co.*, 882 F.2d at 859); *Liberty Life Assurance Co. of Boston v. Gilbert*, 507 F.3d 952, 959 (6th Cir. 2007) (ex-wife had no enforceable security interest in annuity payments of deceased ex-husband despite purported assignment within separation agreement; rejecting equitable right to specific performance where annuitant decedent never executed any QDRO or other document seeking to transfer his interest in the periodic annuity payments or his right to receive future annuity payments to his ex-wife) (citing *Allstate Ins. Co.*, 882 F.2d at 859); *see also Symetra Life Ins. Co. v. Fentress, et al.*, Civil No.: 3:05cv289 (E.D.Va. February 6, 2006) (applying *Allstate*).

assignments, the Fourth Circuit turned to the Restatement (Second) of Contracts, which explains in pertinent part:

> The obligee may promise to enforce the right wholly or partially for the benefit of others . . . . Such a promise may . . . create an equitable interest in the promisee by virtue of a right to specific performance of the promise.

*Id*. at 860 (quoting Restatement (Second) of Contracts, § 326(1) comment a (1981)). Under the circumstances presented, the *Allstate* panel found that the equities did not favor specific enforcement against the annuitant or Allstate.[15]

In *In re Granati*, the Honorable James Cacheris, U.S. District Court Judge in the Eastern District of Virginia, applied *Allstate* in the context of a bankruptcy appeal and found the challenged assignment of an annuity payment by the annuitant non-owner to be an invalid legal assignment. *See In re Granati*, 307 B.R. 827, 830–31 (Bankr. E.D.Va. 2002), *aff'd*, 63 Fed. Appx. 741, 2003 WL 21215098, *1 (4th Cir. 2003) (unpublished). Nonetheless, Judge Cacheris considered whether an equitable remedy (equitable assignment doctrine) might be appropriate and noted that while the equities did not support the remedy in *Allstate*,

> [T]he Fourth Circuit . . . recognized that despite the lack of a valid legal assignment of annuity rights, a party may have an equitable right of specific performance of a promise to assign payments due under an annuity contract. Specifically the Fourth Circuit observed that ***[because] specific performance [is] an equitable remedy, application thereof [is] in the sound discretion of the court***, and that equity [will] not decree specific performance of a contract that is founded in fraud, imposition, mistake, undue advantage, or gross misrepresentation, or where ... it would be unconscientious to enforce it . . . .

---

[15] The relief in *Allstate* was actually found for the annuitant and annuity owner in state surety law. The language of the annuity precluding assignment and Allstate's warning to the bonding company were both noted. *Allstate*, 882 F.2d at 860. In addition, unbeknownst to the annuitant, and subsequent to the defendant's initial release on bond, the Bill of Indictment was returned and charged the accused with an additional "continuing criminal enterprise" offense. The court found that the annuitant did not consent to release under those circumstances (which were described by the panel as presenting an increased risk of non-appearance). *Id*. Therefore, the panel held that the assignment was unenforceable since a modification had occurred without the annuitant's consent. *Id*. at 860−62.

*In re Granati*, 307 B.R. at 831 (internal citations and quotation marks omitted) (emphasis added). In *Granati*, the assignee's performance of its obligations under the legally invalid contract was deemed a significant equitable factor. *Id*. at 833. The Court, in its discretion, employed equity to find that the assignee was deemed "the equitable owner of the annuity contract." *Id*. at 832–33. This Court likewise retains the discretion to determine whether equity has any role in resolving the competing claims to the annuity payment here.

While the QDRO's purported assignment of the annuity payment by BM was not legally valid, the Court finds that the assignment to AM is enforceable in equity. Notwithstanding certain of the claims asserted by Plaintiff's ex-wife, the equities weigh against BM and in favor of upholding the assignment to Third-Party Defendant AM.[16] According to AM, at the time BM and AM were negotiating distribution of their marital property in connection with their pending divorce, BM was receiving four different pensions totaling approximately $10,400 per month: "Allstate $3800, PERS $2600, FERS $1100 (at the time . . . $1000 more from FERS) and Social Security $1600."[17] (Third Party Def.'s Resp., 2). In addition, AM claims that, unlike BM, she had never seen or read the terms of the Annuity and, therefore, was never made aware of the Annuity's non-assignment provision. *Id*. Plaintiff does not appear to dispute AM's representation. More importantly, the QDRO was drafted by a licensed attorney, stipulated to

---

[16] Both Defendant Allstate and Third-Party Defendant AM contend that Plaintiff's claims are barred because he comes to this Court with unclean hands. "The doctrine of clean hands is an equitable defense which prevents recovery where the party seeking relief comes into court with unclean hands." *Collier v. Bryant*, 719 S.E.2d 70, 79 (N.C. App. 2011) (citing *Ray v. Norris*, 337 S.E.2d 137, 141 (N.C. App. 1985)). AM implies that Plaintiff's selection of the Annuity as a means of satisfying his obligations relative to distribution of the marital estate was purposeful (or no coincidence). According to AM, BM "set the stage for Allstate to make an oversight and comply with a court order." (Third Party Def.'s Resp., 4). Plaintiff's motives are not material to the Court's analysis.

[17] The PERS pension refers to a California Peace Officers Pension and FERS refers to the Federal Pension Plan.

and signed by Plaintiff, and approved by a California Superior Court Judge, giving the assignment the stamp of legitimacy and reliability. Finally, AM received the annuity payment from approximately May 2008 through March 2011 and understandably relied on the $3500 annuity payment as income until payments were suspended by Allstate due to this litigation. Therefore, the Court determines, in its discretion, that equitable enforcement of the assignment to AM is, in fact, warranted.

      **D. Interpleader, 28 U.S.C. § 2361**

Allstate, through its Interpleader Claim, seeks to be discharged from the litigation pending the Court's legal determination regarding the respective rights of Plaintiff Barry Mallek and Third-Party Defendant Alice Mallek to the periodic payments under the Annuity. (Third-Party Compl., ¶ 13–14, 17, 19). In light of the Court's summary judgment analysis, Allstate's Interpleader Claim is rendered moot.

### IV. Order

**IT IS, THEREFORE, ORDERED** that Plaintiff Barry Mallek's Motion for Summary Judgment is hereby **DENIED.** Defendant / Third-Party Plaintiff Allstate's Motion for Interpleader is hereby **DENIED as moot.** Allstate is directed to 1) resume payment of the $3500 monthly annuity payment to Third-Party Defendant Alice Mallek no later than March 1, 2014; and 2) distribute the respective balances owed to both Barry and Alice Mallek as a result of Allstate's cessation of payments effective April 2011.

Signed: January 21, 2014

Richard L. Voorhees
United States District Judge